Paul A. Werner*
Steven P. Hollman*
Abraham J. Shanedling*
Hannah J. Wigger*
Christopher L. Bauer*
Alexandra Bustamante*
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
pwerner@sheppardmullin.com
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
hwigger@sheppardmullin.com
cbauer@sheppardmullin.com
abustamante@sheppardmullin.com

Austin Williams (AK Bar No. 0911067)
TROUT UNLIMITED
600 Clipper Ship Court
Anchorage, AK 99515
Telephone: (907) 227-1590
Austin.Williams@tu.org

*Pro hac vice application to be filed

Attorneys for Proposed Intervenor-
Defendant Trout Unlimited

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ILIAMNA NATIVES LTD., *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br><br> Defendants. | Case No. 3:24-cv-00132-SLG |

## PARTIALLY UNOPPOSED MOTION BY TROUT UNLIMITED TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

    A.    Trout Unlimited & The Bristol Bay Watershed. ............................................ 3

    B.    Trout Unlimited's Decades-Long Fight To Prevent Commercial Mining In The Bristol Bay Watershed. ........................................................ 6

ARGUMENT .................................................................................................... 9

I.    Trout Unlimited Is Entitled To Intervene As A Matter Of Right............................ 9

    A.    Trout Unlimited Seeks To Intervene In A Timely Manner......................... 10

    B.    Trout Unlimited Has A Legally Protectable Interest In This Action. ......... 10

    C.    Trout Unlimited's Interests Are Directly Threatened By This Lawsuit. ................................................................................................ 13

    D.    Trout Unlimited's Unique Interests Are Not Adequately Represented By Another Party......................................................................................... 15

II.    Trout Unlimited Is Also Properly Entitled To Intervene By Permission. .............. 18

CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Alaska Indus. Dev. & Export Auth. v. State of Alaska*
    No. 3:21-cv-00245-SLG, 2022 WL 1137312 (D. Alaska 2022)) .......................... passim

*Alaska v. Jewell*
    No. 3:14-cv-00048-SLG, 2014 WL 12521321 (D. Alaska June 10, 2014) .......... passim

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*
    647 F.3d 893 (9th Cir. 2011) ................................................................................. passim

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*
    100 F.3d 837 (10th Cir. 1996) ................................................................................ 12, 14

*Forest Conservation Council v. U.S. Forest Serv.*
    66 F.3d 1489 (9th Cir. 1995) ......................................................................................... 13

*Freedom from Religion Found., Inc. v. Geithner*
    644 F.3d 836 (9th Cir. 2011) ......................................................................................... 18

*Fresno Cnty. v. Andrus*
    622 F.2d 436 (9th Cir. 1980) ......................................................................................... 10

*Idaho Farm Bureau Fed'n v. Babbitt*
    58 F.3d 1392 (9th Cir. 1995) ............................................................................. 10, 11, 16

*Lockyer v. United States*
    450 F.3d 436 (9th Cir. 2006) ......................................................................................... 13

*Mich. State AFL-CIO v. Miller*
    103 F.3d 1240 (6th Cir. 1997) ...................................................................................... 12

*N. Alaska Envtl. Ctr. v. De La Vega*
    No. 3:20-cv-00187, 2021 WL 1093614 (D. Alaska Mar. 22, 2021) .................... 15, 17

*N. Dynasty Minerals Ltd. v. U.S. E.P.A.*
    No. 3:24-cv-00059-SLG, 2024 WL 3901448 (D. Alaska Aug. 22, 2024) ........... passim

*Sagebrush Rebellion, Inc. v. Watt*
    713 F.2d 525 (9th Cir. 1983) .................................................................... 10, 11, 12, 16

-ii-

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

*Kalbers v. United States Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ........................................................................ 9

*State of Alaska v. U.S. E.P.A.*
    No. 3:24-cv-00085-SLG, 2024 WL 3924711 (D. Alaska Aug. 23, 2024) .... 2, 8, 17, 18

*Trbovich v. United Mine Workers*
    404 U.S. 528 (1972) .................................................................................... 17

*Trout Unlimited v. Pirzadeh*
    1 F.4th 738 (9th Cir. 2021) .................................................................... 7, 16

*United States v. City of L.A.*
    288 F.3d 391 (9th Cir. 2002) ........................................................... 9, 10, 12

*United States v. Oregon*
    745 F.2d 550 (9th Cir. 1984) .................................................................... 10

*Vivid Entm't, LLC v. Fielding*
    774 F. 3d 566 (9th Cir. 2014) ..................................................................... 9

*W. Watersheds Project v. Haaland*
    22 F.4th 828 (9th Cir. 2022) ..................................................................... 14

*Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*
    684 F.2d 627 (9th Cir. 1982) ..................................................................... 10

Statutes

33 U.S.C. § 404(c) .............................................................................. passim

Other Authorities

Fed. R. Civ. P. 24 ......................................................................................... 9

Fed. R. Civ. P. 24(a)(2) ........................................................................... 9, 19

Fed. R. Civ. P. 24(b)(1)(B) ........................................................................ 17

Fed. R. Civ. P. 24(b)(3) .............................................................................. 17

Local Rule 16.3 ............................................................................................ 9

## INTRODUCTION

Trout Unlimited, the nation's largest nonprofit organization dedicated to coldwater conservation, seeks to intervene in this action in support of Defendants Environmental Protection Agency ("EPA") and its related administrators.[1] Trout Unlimited has fought for decades to secure federal protections barring environmentally ruinous commercial mining operations in the pristine Bristol Bay watershed that are directly challenged in this lawsuit.

Trout Unlimited has actively and helpfully participated in administrative proceedings related to the environmental review of the proposed Pebble Mine for two decades, including submitting comments and testifying at administrative hearings related to the EPA's Clean Water Act ("CWA") Section 404(c) process to remove the area of planned mining operations from commercial development. Trout Unlimited has also been a party to multiple lawsuits, including through intervention, concerning the protection of Bristol Bay through the Section 404(c) process. It was indeed a target of these mining interests in earlier federal litigation. In addition to engagement in these administrative and legal proceedings, Trout Unlimited has also expended significant time, energy, and

---

[1] Undersigned counsel has inquired as to Plaintiffs' and Defendants' respective positions on this Motion. Counsel for Plaintiffs stated that Plaintiffs "would not oppose [Trout Unlimited's] permissive intervention in this case, subject to the conditions outlined in Judge Gleason's intervention orders in the Northern Dynasty and Alaska cases." Counsel for Defendants stated that the United States opposes intervention of right under Fed. R. Civ. P. 24(a)(2), however the United States does not oppose Trout Unlimited's permissive intervention.

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

resources educating the public and government actors on the irreversible, catastrophic harms that commercial mining would inflict on the delicate Bristol Bay ecosystem and on those whose livelihoods and enjoyment depend on it – including Trout Unlimited members.

Given its longstanding and abiding interests in the subject of this litigation, Trout Unlimited is entitled to intervene as a matter of right to protect its unique interests and participate in the outcome of an administrative process in which it has played a key role for decades. Its motion, which comes at the beginning of this litigation, is timely. Trout Unlimited has a protectable interest in the conservation of the Bristol Bay watershed, the lawful application of the CWA, and the outcome of the administrative process in which it has thoroughly participated. An adverse decision here threatens to impair the recreational and commercial use of Bristol Bay by Trout Unlimited's members, and undermine the spirit and purpose of the CWA. Nor are Trout Unlimited's interests adequately represented by the EPA or any other intervening party, which do not share Trout Unlimited's members' unique commercial and recreational interests in the area where they live and work.

Alternatively, the Court should allow Trout Unlimited to intervene permissively, as the Court recently did in *N. Dynasty Minerals Ltd. v. U.S. E.P.A.*, No. 3:24-cv-00059-SLG, 2024 WL 3901448, at *4 (D. Alaska Aug. 22, 2024), and in *State of Alaska v. U.S. E.P.A.*, No. 3:24-cv-00085-SLG, 2024 WL 3924711 (D. Alaska Aug. 23, 2024). Neither Plaintiffs nor the EPA oppose permissive intervention. And Trout Unlimited's motion is timely, and

its anticipated defenses involve questions of law and fact common to the main action challenging the EPA's Final Determination.

For all these reasons, as discussed more fully below, the Court should grant Trout Unlimited's Motion. Trout Unlimited's Proposed Answer is attached as Exhibit D.

**BACKGROUND**

**A.      Trout Unlimited & The Bristol Bay Watershed.**

Trout Unlimited is a national nonprofit organization founded a half century ago that is dedicated to conserving North America's coldwater fisheries and their watersheds. Ex. A (Declaration ("Decl.") of Nelli Williams) ("Williams Decl.") ¶ 2. As part of that core mission, Trout Unlimited works to protect some of the most pristine and prized rivers in North America, engages in critical watershed restoration activities, and is educating the next generation of coldwater stewards to protect Alaska's natural heritage. Williams Decl. ¶¶ 1–4; Ex. B (Decl. of Brian Kraft) ("Kraft Decl.") ¶ 1; Ex. C (Decl. of Nanci Morris Lyon) ("Lyon Decl.") ¶ 1. Trout Unlimited also works to preserve, protect, and restore wild salmon and trout populations throughout Alaska. *Id.* Trout Unlimited has over 300,000 members worldwide. Williams Decl. ¶ 2. And it has four chapters in Alaska, with over 20,000 active members. *Id.*

The Bristol Bay watershed in Southwest Alaska is a truly unique and exceedingly productive natural wonder. It is the world's largest commercial sockeye salmon fishery,

-3-
*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

producing nearly half of the world's wild sockeye salmon.  *See* Final Determination[2] at ES-1; *see also* Lyon Decl. ¶ 4; Kraft Decl. ¶ 3.  It also has internationally renowned rainbow trout populations that attract anglers from around the world, and it ranks consistently among the top three king salmon producers.  Final Determination at 3–6.  The waters in this region have long been a critically important part of the Alaska's economy and have provided sustainable jobs, subsistence uses, and other benefits to Alaskans for generations.  *Id.* at ES-3.

Trout Unlimited is deeply invested in protecting the Bristol Bay watershed because it supports one of the most prized and productive coldwater fisheries in the world.  Williams Decl. ¶ 3; Kraft Decl. ¶¶ 3–4; Lyon Decl. ¶¶ 4–5.  Trout Unlimited members have used these waters for recreation and sport fishing, and intend to continue to do so.  Williams Decl. ¶ 7; Kraft Decl. ¶¶ 2–4; Lyon Decl. ¶¶ 2–7.  Several Alaskan Trout Unlimited members also live and work in the area, including in the fisheries.  Williams Decl. ¶ 3.

For example, Trout Unlimited member Brian Kraft is the part owner of two sport fishing lodges in the Bristol Bay watershed.  Kraft Decl. ¶ 2.  His business depends both on the quantity and variety of fish that spawn and inhabit the area and on the quality of the experience provided to visitors by the unique, wild character of fishing in remote areas of

---

[2]  EPA, *Final Determination of the U.S. Environmental Protection Agency Pursuant to Section 404(C) of the Clean Water Act: Pebble Deposit Area, Southwest Alaska* (Jan. 2023),  https://www.epa.gov/bristolbay/final-determination-pebble-deposit-area  ("Final Determination").

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

the Bristol Bay watershed. *Id.* ¶¶ 2–4. The same is true of longtime Trout Unlimited member and local lodge owner Nanci Morris Lyon, who owns a lodge in the Bristol Bay watershed. Lyon Dec. ¶¶ 4–5.

The Bristol Bay watershed happens to sit atop a large copper, gold, and molybdenum deposit known as the Pebble deposit, which, over the years, various mining interests have considered commercially exploiting. All but one to consider it have abandoned the notion as foolishly impractical and uneconomical.[3] That is so because the prime deposits for mining are so low-grade – that is, they contain relatively small amounts of metals compared to the amount of ore – that mining would be economical only if conducted over large areas that "will necessarily produce large amounts of waste material." EPA, *Resp. to Comments on Final Determination* 34 (Jan. 2023).[4] In the face of these hard realities, in 2011, Pebble Limited Partnership ("PLP"), which is owned by the Canadian

---

[3] *See* SEC, Northern Dynasty Minerals Ltd. Schedule 13G (Feb. 25, 2011); Suzanne, *Anglo American pulls out of Alaska mines project*, The Guardian (Sept. 16, 2013), https://www.theguardian.com/environment/2013/sep/16/anglo-american-alaska-gold-mines; Suzanna Caldwell & Alex DeMarban, *Rio Tinto pulls out of Pebble Partnership, gifting its stake to Alaska organizations*, Anchorage Daily News (July 7, 2016), https://www.adn.com/economy/article/rio-tinto-pulls-out-pebble-partnership-gifting-its-ownership-alaska-organizations/2014/04/08; Avery Lill, *Pebble Mine loses funding from First Quantum Minerals*, Alaska Pub. Media (May 25, 2018), https://www.alaskapublic.org/2018/05/25/pebble-mine-loses-funding-from-first-quantum-minerals/.

[4] EPA, *Resp. to Comments on Final Determination* 34 (Jan. 2023), https://www.epa.gov/system/files/documents/2023-01/Pebble-Deposit-Area-404c-RTC-Jan2023.pdf.

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

company Northern Dynasty Materials, Ltd., submitted plans to the U.S. Securities and Exchange Commission for mining that very unpromising site. Final Determination §§ 2.2.1 at 2–10. In doing so, and consistent with its low-grade prospects, PLP proposed a vast mine with a mind-boggling footprint: it would carve out a pit at the headwaters of Bristol Bay nearly as deep as the Grand Canyon with infrastructure spanning an area as large as Manhattan. *See id.* at ES-3 to ES-8. The mine would, in short, cover an epic expanse, and its operation would necessarily cause profound environmental devastation.

### B. Trout Unlimited's Decades-Long Fight To Prevent Commercial Mining In The Bristol Bay Watershed.

Because of the obvious and enormous threat that large-scale mining poses to the unspoiled Bristol Bay watershed, Trout Unlimited and its membership have been deeply concerned about the project since it first came to the public's attention. Williams Decl. ¶ 4. To address those concerns, Trout Unlimited has, over the years, submitted extensive comments in all relevant administrative proceedings before the EPA, the U.S. Army Corps of Engineers, and other federal and state agencies advocating for the protection of the Bristol Bay region, testified in hearings, and submitted technical comments. *Id.* On September 4, 2022, for example, Trout Unlimited filed comments before the EPA on the agency's then Revised Proposed Determination pursuant to Section 404(c) of the CWA. *Id.*[5]

---

[5] Trout Unlimited, *Comments on the Revised 404(c) Proposed Determination for the*
(footnote continued on next page)
-6-
*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

Trout Unlimited also has litigated issues related to the proposed Pebble Mine. Trout Unlimited was an intervenor-defendant in the 2014 litigation brought by PLP and the State of Alaska against the EPA concerning initiation of the Section 404(c) review process and a target of PLP discovery. *Id.* ¶ 5. In granting Trout Unlimited's motion to intervene in that case, the Court highlighted Trout Unlimited's involvement in the EPA's proceedings. Order Granting Trout Unlimited's Motion to Intervene, *Pebble Ltd. P'ship v. EPA*, No. 3:14-cv-00097-HRH (Aug. 19, 2014), ECF No. 218 at 4 (finding it "clear from the record developed thus far that Trout Unlimited was involved in proceedings before the EPA").

In 2019, Trout Unlimited sued the EPA in this Court, challenging the agency's withdrawal of its 2014 Proposed Determination under Section 404(c) of the CWA.[6] After the Court granted the EPA's motion to dismiss on the theory the agency's action was not subject to any judicial review, Trout Unlimited alone successfully appealed that ruling to the Ninth Circuit, which reversed and remanded the case to this Court. *Trout Unlimited v. Pirzadeh*, 1 F.4th 738 (9th Cir. 2021). Trout Unlimited then participated in the remanded action, which resulted in the Court's vacatur of the EPA's decision to withdraw the 2014 Proposed Determination and the re-initiation of that environmental review process. That

_____

*Protections of the Bristol Bay Watershed* (Docket ID No. EPA-R10-OW-2022-0418), EPA-R10-OW-2022-0418-1026_attachment_2 (1).pdf.

[6] *See* Complaint, *Trout Unlimited v. Pirzadeh*, No. 3:19-cv-00268-SLG (D. Alaska Oct. 9, 2019), ECF No. 1; Order Consolidating Cases, *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Oct. 23, 2019), ECF No. 16.

agency process culminated in EPA's issuance of its Final Determination under Section 404(c) of the CWA protecting Bristol Bay from adverse environmental impacts of commercial mining, which is under direct assault in this litigation.  Williams Decl. ¶ 5.[7]

In November 2023, Trout Unlimited submitted an *amicus curiae* brief at the Supreme Court in support of the United States' opposition to the State of Alaska's motion for leave to file a bill of complaint challenging the EPA's Final Determination.  *Id.*[8]  This suit (and others filed by PLP and the State of Alaska here and in the U.S. Court of Federal Claims Claims) followed the Supreme Court's refusal to entertain Alaska's original action.  And just last month, this Court granted Trout Unlimited permissive intervention in the suits filed by PLP and the State of Alaska.  *Northern Dynasty Minerals Ltd*, No. 3:24-cv-00059-SLG, 2024 WL 3901448, at *4; *State of Alaska*, No. 3:24-cv-00085-SLG, 2024 WL 3924711 at *2.

In short, Trout Unlimited has been involved in every aspect of the Pebble Mine proposal and litigation for more than two decades, including going alone on the appeal that

---

[7]  *See also* Response in Support of Motion to Remand, *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Oct. 12, 2021), ECF No. 105.

[8]  *See also* Br. for Amicus Curiae Trout Unlimited, *Alaska v. United States*, No. 22O157, 2023 WL 7996465 (Nov. 9, 2023).  The Supreme Court declined Alaska's invitation to gin up an original action seeking to convert basic APA claims into a purported constitutional challenge.

-8-

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

led to the Final Determination.  It is therefore keenly interested in and properly entitled to intervene in this litigation involving the Final Determination too.  Williams Decl. ¶ 4.

## **ARGUMENT**

Trout Unlimited is entitled to intervene here as of right and by permission.

## I.    **Trout Unlimited Is Entitled To Intervene As A Matter Of Right.**

Trout Unlimited is properly entitled to intervene as of right here.  To do so, it need only show it made a timely application to defend a "significant protectable interest" in an action that "may, as a practical matter, impair or impede the applicant's ability to protect its interest," and where the existing parties "may not adequately represent the applicant's interest."  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897–98 (9th Cir. 2011) (citation omitted); Fed. R. Civ. P. 24(a)(2).  To ensure the "efficient resolution of issues and broadened access to the courts," the Ninth Circuit employs a "liberal policy in favor of intervention" and interprets Federal Rule of Civil Procedure 24 "broadly in favor of proposed intervenors."  *United States v. City of L.A.*, 288 F.3d 391, 397–98 (9th Cir. 2002).  Trout Unlimited easily clears that modest threshold.[9]

---

[9]  Trout Unlimited is not required to satisfy the requirements for Article III standing to intervene as a defendant.  *See Vivid Entm't, LLC v. Fielding*, 774 F. 3d 566, 573 (9th Cir. 2014) (stating intervenor that is not initiating action "need not meet Article III standing requirements").  But it has Article III standing in this case because it is directly impacted by the challenged EPA action at issue, and its interests are threatened by Plaintiffs' requested relief as well.

-9-
*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

**A.** **Trout Unlimited Seeks To Intervene In A Timely Manner.**

Trout Unlimited's motion is timely. "Timeliness hinges on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quotations omitted). The litigation here has just begun, with this motion coming within a few months of when the matter was filed, and less than two weeks after the EPA filed its answer on September 13, 2024. Dkt. 20. Moreover, the Court has ordered the deadlines set forth in Local Rule 16.3 stayed until the Court rules on a motion for protective order in the concurrent *State of Alaska v. EPA* litigation. Dkt. 18. Consequently, Trout Unlimited's intervention at this early stage will not prejudice any existing party. *See United States v. Oregon*, 745 F.2d 550, 552–53 (9th Cir. 1984). Because Trout Unlimited's intervention comes at the start of this litigation and will thus not "disrupt[ ] or delay" the proceedings, it has satisfied the "traditional features of a timely motion." *Citizens for Balanced Use*, 647 F.3d at 897 (holding motion to intervene timely when filed less than three months after complaint was filed and less than two weeks after Forest Service's answer).

**B.** **Trout Unlimited Has A Legally Protectable Interest In This Action.**

Trout Unlimited also has a protectable interest "relating to the property or transaction that is subject of the action." *See id.* A "protectable interest" is an interest "protected under some law" that has some "relationship" with the plaintiff's claims – that

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

is, "the resolution of the plaintiff's claims actually will affect the applicant." *City of L.A.*, 288 F.3d at 398. The Ninth Circuit interprets "protectable interest" broadly, "involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.*; *see also Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (same). In particular, the Ninth Circuit repeatedly has held that an entity has a right to intervene in an action challenging the legality of a measure, initiative, or statute in which the entity actively participated. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526 (9th Cir. 1983); *Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 629-30 (9th Cir. 1982). And this Court repeatedly has held that "interests in preserving the wildlife and wilderness character" of land "for subsistence and recreational purposes" qualify as significant protectible interests. *Alaska v. Jewell*, No. 3:14-cv-00048-SLG, 2014 WL 12521321, at *2 (D. Alaska June 10, 2014); *Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-CV-00245-SLG, 2022 WL 1137312, at *2 (D. Alaska Apr. 18, 2022) (finding "legally protected" interests in land for "subsistence, recreation, and wilderness preservation" and that these "are related to the administrative and environmental law claims at issue in this case").

Here, Trout Unlimited undoubtedly has a legally protectable interest in this action. Trout Unlimited has fought for more than two decades to secure the Final Determination protecting the Bristol Bay watershed, the legality of which is directly challenged in this litigation. Williams Decl. ¶ 5. It submitted comments during the administrative process

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

related to Pebble Mine, encouraged the EPA's use of the Section 404(c) process regarding the proposed mine, and intervened in subsequent litigation involving EPA's exercise of its Section 404(c) authority. *Id.* Trout Unlimited alone ultimately – and successfully – appealed the agency's withdrawal of its 2014 Proposed Determination under Section 404(c) of the CWA, which resulted in a remand to this Court and the issuance of the Final Determination. *Id.* And Trout Unlimited submitted an *amicus curiae* brief at the U.S. Supreme Court opposing the State of Alaska's extraordinary – and misguided – attempt to file an original bill of complaint challenging the Final Determination. *Id.*

Thus, Trout Unlimited is entitled to intervene here as a matter of right "in an action challenging the legality of a measure it has supported," *Idaho Farm Bureau*, 58 F.3d at 1397, in a case in which it "participated actively in the administrative process," *Sagebrush*, 713 F.2d at 526; *see also Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997) (holding when an entity seeking intervention has participated "in the administrative process leading to the governmental action," the entity has demonstrated a direct and substantial interest in the litigation); *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 842 (10th Cir. 1996). To be sure, this action directly targets the Final Determination that Trout Unlimited's successful appeal made possible and protects the Bristol Bay watershed from ruinous commercial mining operations.

Trout Unlimited also has a unique and legally protectable interest in preserving the wild and unspoiled characteristics, including the pristine water and productive fisheries, of

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

Bristol Bay. *See, e.g.*, *Sagebrush*, 713 F.2d at 527–28 (holding there is "no serious dispute" regarding "the existence of a protectable interest" where "an adverse decision . . . would impair the [applicant]'s interest in the preservation of birds and their habitats"); *Jewell*, 2014 WL 12521321, at 2; *Alaska Indus. Dev.*, 2022 WL 1137312, at *2. Trout Unlimited has over 20,000 active members and supporters in Alaska, many of whom fish in Bristol Bay recreationally and for subsistence purposes and have commercial interests that are directly dependent on the Bristol Bay watershed. Williams Decl. ¶¶ 2–3; Lyon Decl. ¶¶ 8–13; Kraft Decl. ¶¶ 5–9. The resolution of the claims in this case will certainly "affect" Trout Unlimited's members. *City of L.A.*, 288 F.3d at 398; *Jewell*, 2014 WL 12521321, at *2; *Alaska Indus. Dev.*, 2022 WL 1137312, at *2.

## C. Trout Unlimited's Interests Are Directly Threatened By This Lawsuit.

Trout Unlimited's interests are threatened by this action and may be impaired absent intervention. A movant's interests are impaired where they would be "substantially affected in a practical sense by the determination made in an action." *Citizens for Balanced Use*, 647 F.3d at 898; *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1497–98 (9th Cir. 1995). As such, after determining the applicant has a protectable interest, courts have "little difficulty concluding that the disposition of [the] case may, as a practical matter, affect" such interest. *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Here, the disposition of this action clearly "may impair" the interests of Trout Unlimited and its members.  *See Citizens for Balanced Use*, 647 F.3d at 901.  A ruling in Plaintiffs' favor would undo the lawful, science-based protections for the Bristol Bay watershed that Trout Unlimited has fought to secure for over two decades to ensure that this natural wonder is not ruined by commercial mining.  Trout Unlimited's longstanding efforts to "conserv[e] and enjoy[ ]" Bristol Bay's unspoiled coldwater fisheries would thus be significantly harmed by such a reversal.  *See id.* at 898; *see also Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (holding a ruling in favor of Alaska challenging Federal defendants' moratorium on oil and gas leases on the Coastal Plain "might impair both Movants' significant protectable interests").

Additionally, a decision in Plaintiffs' favor vacating the Final Determination could, as a practical matter, create unfavorable precedent and impede Trout Unlimited's efforts to secure CWA protections for other natural resources.  *Coal. of Ariz./N.M. Cntys.*, 100 F.3d at 844 (noting applicant would "as a practical matter, be impaired by the *stare decisis* effect of the district court's decision" (cleaned up)); *Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (finding movant's interests may be impaired where, in ruling, "the Court might decide threshold questions . . . in a way that precludes determinations in subsequent litigation"). This too, favors intervention.

**D.    Trout Unlimited's Unique Interests Are Not Adequately Represented By Another Party.**

Trout Unlimited's interests are not adequately protected by the existing parties in this action because the EPA may fail to "make all of [Trout Unlimited]'s arguments," and Trout Unlimited, through its years of advocacy related to the proposed Pebble Mine, will certainly "offer . . . necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898.   "The burden of showing inadequacy of representation is minimal and [is] satisfied if the applicant can demonstrate that representation of its interests may be inadequate." *Alaska Indus. Dev.*, 2022 WL 1137312, at *5 (quoting *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022)). Indeed, as this Court repeatedly has recognized, where agencies or States have dual or broader purposes than applicant-intervenors, intervention is appropriate. *Jewell*, 2014 WL 12521321, at *4 (finding a "dual-mission agency" "unlikely" to make "all of the arguments the Applicant Intervenors would make"); *Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (allowing intervenors who "represent specialized interests that seek only the preservation of the subsistence, cultural, and wilderness aspects of the lands at issue"); *N. Alaska Envtl. Ctr. v. De La Vega*, No. 3:20-cv-00187, 2021 WL 1093614, at *1-2 (D. Alaska Mar. 22, 2021) (Gleason, J.) (granting intervention where applicants may provide "perspective and information" the parties would not).

While the EPA and the federal Government "represent the at-large interests of the

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

general public," *see Alaska Indus. Dev.*, 2022 WL 1137312, at \*2, Trout Unlimited's members have concrete commercial and recreational interests in the Bristol Bay watershed because they live in, work in, and enjoy the area, Williams Decl. ¶¶ 2–3. Its members thus have keen interests in preserving the environmental health, natural productivity, and remote and unspoiled nature of the area. *Id.* For those reasons, Trout Unlimited has spent the last two decades advocating and litigating to protect the watershed from the Pebble Mine. *Id.* ¶¶ 4–5.

Those interests uniquely belong to Trout Unlimited and are not (and cannot be) adequately represented by the EPA or another party. Unlike Trout Unlimited, the EPA must take into account its political and resource constraints and must represent what it perceives to be the interests of the United States in this and future cases. It therefore cannot be expected to fully represent the interests of Trout Unlimited and its members or to "make all of" Trout Unlimited's arguments. *Citizens for Balanced Use*, 647 F.3d at 898; *Jewell*, 2014 WL 12521321, at \*4; *Alaska Indus. Dev.*, 2022 WL 1137312, at \*2. In fact, in the last decade, for example, the EPA has changed Administrators several times and has not always taken positions or presented views that align with Trout Unlimited's position. *See Sagebrush*, 713 F.2d at 528–29; *Idaho Farm Bureau*, 58 F.3d at 1398. Indeed, Trout Unlimited had to sue the EPA in 2019 to challenge its withdrawal of protections for Bristol Bay. Williams Decl. ¶ 5. And it was Trout Unlimited's successful appeal of the EPA's position that its withdrawal was not subject to any judicial review that ultimately led to the

Final Determination challenged here. *Pirzadeh*, 1 F.4th at 738. With respect, Trout Unlimited cannot, and should not have to, simply trust the government to represent its specific interests – especially where, in the recent past, the government has taken positions directly contrary to Trout Unlimited's interests on the very subject of this lawsuit.

Nor could any other likely intervenor defendants – such as those that focus on preserving the subsistence-based culture and economy of Bristol Bay – be counted on adequately to represent Trout Unlimited's interests. Trout Unlimited is unique in its focus on conserving coldwater fisheries, in its membership and interests in Bristol Bay, in its interest in the region's recreational fisheries, and in its particular concern with how the application and enforcement of the CWA impacts Trout Unlimited's unique mission in Alaska and elsewhere. *Jewell*, 2014 WL 12521321, at *4; *Alaska Indus. Dev.*, 2022 WL 1137312, at *2. Trout Unlimited also offers a distinct perspective on this litigation, given the years it has spent engaged in advocacy and litigation over the proposed Pebble Mine, including its solitary and successful appeal of the EPA's prior withdrawal decision, which the agency asserted was wholly insulated from any judicial review. *See Citizens for Balanced Use*, 647 F.3d at 898; *N. Alaska Envtl. Ctr.*, 2021 WL 1093614, at *1–2.

Trout Unlimited has more than met its "minimal" burden to show representations of its interests "may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (cleaned up) (citation omitted); *Citizens for Balanced Use*, 647 F.3d at 898. The Court should therefore allow Trout Unlimited to intervene as of right.

## II.    Trout Unlimited Is Also Properly Entitled To Intervene By Permission.

While Trout Unlimited properly may intervene as of right, it also is properly entitled to intervene permissively too because it "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B) & (b)(3); *see also N. Dynasty Minerals Ltd.*, 2024 WL 3901448, at *4 (granting Trout Unlimited permissive intervention in parallel case challenging the EPA's Final Determination);  *State of Alaska*, 2024 WL 3924711, at *2 (same).  "[P]ermissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'"  *N. Dynasty Minerals Ltd.*, 2024 WL 3901448, at *2 (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011)).   However, no independent jurisdictional ground is needed for "proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims."  *Id.* (citing *Freedom From Religion*, 644 F.3d at 844)).

In two related cases, the Court just recently, and correctly concluded that Trout Unlimited was entitled to intervene permissively because it "satisfie[d] the three threshold requirements."  *See id.* at *4; *see also State of Alaska*, 2024 WL 3924711, at *1.  The same properly should go here.  Trout Unlimited's motion is timely.  And "common questions of law and fact exists because Trout Unlimited intends to assert legal and factual defenses to oppose Plaintiffs' challenges to the EPA's decision-making process and 2023 Final

*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG

Determination." *N. Dynasty Minerals Ltd.*, 2024 WL 3901448, at *4; *see generally* Trout Unlimited Proposed Answer (Ex. D); Williams Decl. ¶¶ 5 & 8;

Other discretionary factors "weigh in favor of allowing Trout Unlimited to intervene in this case" too. *N. Dynasty Minerals Ltd.*, 2024 WL 3901448, at *4. "Members of Trout Unlimited conduct business or recreate in the Bristol Bay region;" "[t]wo such members own three sportfishing lodges in the Bristol Bay region that could be affected by this litigation"; and "Trout Unlimited has actively participated in the administrative process that led to the challenged Final Determination and has litigated issues related to the proposed Pebble Mine before this Court." *Id.* (citing identical declarations filed in support of motion to intervene).

Nor will Trout Unlimited unduly delay the case by expanding the scope of litigation or cause any undue prejudice to any other party. The Court rejected these same arguments in *Northern Dynasty Minerals Ltd.*, holding "Trout Unlimited's unique position as a representative of commercial and recreational interests and as an active participant in the extensive administrative proceedings and prior litigation related to the Pebble Deposit warrant its permissive intervention." 2024 WL 3901448, at *4. Trout Unlimited is also amenable to the same conditions on intervention the Court adopted in that case "to minimize any delay or duplicative briefing." *Id.* at 6.

## CONCLUSION

For all the foregoing reasons, the Court should grant Trout Unlimited's Motion to

Intervene either under Rule 24(a) or Rule 24(b) of the Federal Rules of Civil Procedure.


Dated:  September 30, 2024            Respectfully submitted,

By:  *s/ Austin Williams*
Austin Williams (AK Bar No. 0911067)
TROUT UNLIMITED
600 Clipper Ship Court
Anchorage, AK 99515
Telephone: (907) 227-1590
Austin.Williams@tu.org

Paul A. Werner*
Steven P. Hollman*
Abraham J. Shanedling*
Hannah J. Wigger*
Christopher L. Bauer*
Alexandra Bustamante*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
pwerner@sheppardmullin.com
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
hwigger@sheppardmullin.com
cbauer@sheppardmullin.com
abustamante@sheppardmullin.com

*Pro hac vice* application to be filed

*Attorneys for Proposed Intervenor-Defendant Trout Unlimited*

-20-
*Iliamna Natives Ltd., et al. v. E.P.A.*, Case No. 3:24-00132-SLG