Siobhan McIntyre (AK Bar No. 1206050)
Joanna Cahoon (AK Bar No. 1405034)
TRUSTEES FOR ALASKA
121 W. Fireweed Ln., Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
smcintyre@trustees.org
jcahoon@trustees.org

*Attorneys for Applicant Intervenor-Defendants SalmonState, Alaska Community Action on Toxics, Alaska Wilderness League, Alaska Wildlife Alliance, Cook Inletkeeper, Friends of McNeil River, Kachemak Bay Conservation Society, National Parks Conservation Association, National Wildlife Federation, Sierra Club, The Alaska Center, and Wild Salmon Center*

Erin Colón (AK Bar No. 1508067)
Charisse Arce (AK Bar No. 2303017)
EARTHJUSTICE
310 K Street, Suite 508
Anchorage, AK 99501
Phone: (907) 277-2500
ecolon@earthjustice.org
carce@earthjustice.org

*Attorneys for Applicant Intervenor-Defendants Center for Biological Diversity and Friends of the Earth*

Jacqueline Iwata (*pro hac vice* pending)
Thomas Zimpleman (*pro hac vice* pending)
NATURAL RESOURCES DEFENSE COUNCIL
1152 15th St. NW Suite 300
Washington, DC 20005
Phone: (202) 289-6868
jiwata@nrdc.org
tzimpleman@nrdc.org

Joel Reynolds (*pro hac vice* pending)
NATURAL RESOURCES DEFENSE COUNCIL
1314 2nd St.
Santa Monica, CA 90401
Phone: (310) 434-2300
jreynolds@nrdc.org

*Attorneys for Applicant Intervenor-Defendant Natural Resources Defense Council*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ILLIAMNA NATIVES LTD. And ALASKA PENNINSULA CORP., <br><br> Plaintiffs, | Case No. 3:24-cv-00132-SLG |

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; MICHAEL S. REGAN, in his
official capacity as Administrator of the
Environmental Protection Agency;
BRUNO PIGOT, in his official capacity as
Environmental Protection Agency's Acting
Assistant Administrator for Water,

Defendants.

**PARTIALLY UNOPPOSED JOINT MOTION TO INTERVENE BY APPLICANT
INTERVENOR-DEFENDANTS SALMONSTATE, ALASKA COMMUNITY
ACTION ON TOXICS, ALASKA WILDERNESS LEAGUE, ALASKA WILDLIFE
ALLIANCE, COOK INLETKEEPER, FRIENDS OF MCNEIL RIVER,
KACHEMAK BAY CONSERVATION SOCIETY, NATIONAL PARKS
CONSERVATION ASSOCIATION, NATIONAL WILDLIFE FEDERATION,
SIERRA CLUB, THE ALASKA CENTER, WILD SALMON CENTER, CENTER
FOR BIOLOGICAL DIVERSITY, FRIENDS OF THE EARTH, AND NATURAL
RESOURCES DEFENSE COUNCIL
(Fed. R. Civ. P. 24)**

Pursuant to Federal Rule of Civil Procedure 24(a) and (b), SalmonState, Alaska

Community Action on Toxics, Alaska Wilderness League, Alaska Wildlife Alliance,

Cook Inletkeeper, Friends of McNeil River, Kachemak Bay Conservation Society,

National Parks Conservation Association, National Wildlife Federation, Sierra Club, The

Alaska Center, Wild Salmon Center, Center for Biological Diversity, Friends of the

Earth, and Natural Resources Defense Council, (collectively "SalmonState") move to

intervene as defendants in this litigation.

The U.S. Environmental Protection Agency (EPA) opposes intervention of right under Fed. R. Civ. P. 24(a)(2). However, EPA does not oppose SalmonState's permissive intervention in this case. Counsel for Plaintiffs oppose intervention of right under Fed. R. Civ. P. 24(a)(2), but does not oppose SalmonState's permissive intervention in this case, subject to the limitations issued by the Court in *Northern Dynasty Minerals et al. v. EPA and State of Alaska v. EPA*. Order Granting Motions to Intervene, *Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG (D. Alaska Aug. 22, 2024), ECF No. 95 at 14–15; Order Granting Motions to Intervene, *State of Alaska v. EPA*, Case No. 3:24-cv-00084 (D. Alaska Aug. 23, 2024), ECF No. 57 at 5–6.

## INTRODUCTION

SalmonState seeks to intervene to protect the Bristol Bay headwaters from the devastating and unavoidable adverse impacts of the proposed Pebble Mine—a mining project advanced by Northern Dynasty Minerals Limited ("Northern Dynasty") and the Pebble Limited Partnership ("Pebble Partnership") (collectively "PLP"). Iliamna Natives Limited and Alaska Peninsula Corporation (collectively "INL") challenge EPA's Final Determination under Section 404(c) of the Clean Water Act (CWA) ("EPA's Final Determination"), which prohibits and restricts certain discharges from proposed mining operations at the Pebble deposit in southwestern Alaska. Compl. at 2–4, ECF No. 1. INL alleges that EPA's Final Determination violates Article I of the United States Constitution. Compl. at 18–20, ECF No. 1. Plaintiffs request the Court vacate EPA's

Final Determination and issue a declaratory judgment finding EPA's Final Determination violated the United States Constitution. Compl. at 21, ECF No. 1. Plaintiffs further request that the Court declare Section 404(c) of the CWA unconstitutional and enjoin EPA's enforcement of Section 404(c) of the CWA. *Id*. If successful, INL's lawsuit would re-open the door to large-scale, industrial mining in one of the last intact salmon ecosystems in the world.

This Court should grant SalmonState's motion to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because SalmonState satisfies the four-factor test. First, the motion is timely, coming early in the litigation (shortly after the Defendants have filed their answer) and will cause no delays that would prejudice any party. Second, SalmonState has long-standing interests in protecting the exceptional fisheries, ecosystems, wilderness, and wildlife of Bristol Bay for personal and commercial fishing, as well as subsistence and recreational use and enjoyment. Third, a decision in INL's favor would impair SalmonState's interests because large-scale, industrial mining in the Bristol Bay headwaters would pollute the Bristol Bay watershed and damage Bristol Bay's outstanding ecological, economic, and cultural resources. Fourth, SalmonState's interests in protecting the Bristol Bay watershed are distinct from EPA's interests in administering the CWA. This divergence of interests has led to an adversarial history between SalmonState and EPA on Section 404(c) protections for the Bristol Bay watershed. As a result, EPA does not adequately represent SalmonState's

interests. For these same reasons, SalmonState also meets the test for permissive intervention under Rule 24(b).

## <u>BACKGROUND</u>

## I.    THE BRISTOL BAY WATERSHED

The Bristol Bay watershed "is an area of unparalleled ecological value, boasting salmon diversity and productivity unrivaled anywhere in North America" and "supports the world's largest runs of Sockeye Salmon, producing approximately half of the world's Sockeye Salmon." Ex. 1 at 9. The Bristol Bay watershed has "supported Alaska Native cultures for thousands of years and continue[s] to support one of the last intact salmon-based cultures in the world." Ex. 1 at 9. Bristol Bay's salmon resources are valued at more than $2.2 billion overall. Ex. 1 at 11. In 2019, for instance, these salmon resources supported a $2.0 billion commercial fishery—$990 million of which was earned in Alaska—and 15,000 jobs. *Id*.

The Bristol Bay region's abundant, world class sport-fishing, wildlife viewing, and outdoor recreation are also "directly or indirectly dependent on the intact, salmon-based ecosystems of the region." Ex. 1 at 36. Approximately 40,000 to 50,000 people visit the Bristol Bay region each year for recreational angling, bear viewing, hiking, biking, backpacking, and other wilderness activities—generating $155 million in total economic output in 2019 and 2,300 jobs. Ex. 1 at 36–37. Thus, the Bristol Bay watershed and its salmon fisheries "have significant nutritional, cultural, economic, and recreational

SalmonState, et al.'s Jt. Mot. to Intervene                                  Page 5 of 25
*Iliamna Natives Ltd. v. EPA*, Case No. 3:24-cv-00132-SLG

value within and beyond the Bristol Bay region." Ex. 1 at 11. One of the main success factors for the Bristol Bay fisheries is the fact that its aquatic resources "are largely untouched and pristine, unlike the waters that support many other salmon fisheries worldwide." Ex. 1 at 9.

PLP has long sought to exploit the Pebble mineral deposit. Ex. 1 at 23. PLP's proposed Pebble Mine would displace "approximately [1.3 billion] tons of mineralized rock and 150 million tons of waste rock and overburden" over the course of its twenty-year lifetime. Ex. 1 at 23. The impacts from this magnitude of construction and proposed mining—and the attendant discharge of dredged or fill material for these activities— would result in staggering losses to the Bristol Bay watershed, including the loss of approximately 99.7 miles of stream habitat, 2,108 acres of wetlands, and monthly streamflow changes of over twenty percent that would adversely affect an additional twenty-nine miles of anadromous fish streams. Ex. 1 at 15, 20.

## II. EPA INITIALLY PROPOSED PROTECTIONS FOR BRISTOL BAY IN RESPONSE TO ADVOCACY EFFORTS, INCLUDING BY SALMONSTATE.

The CWA prohibits the "discharge of any pollutant" into waters of the United States without a permit. *See* 33 U.S.C. § 1311(a). Congress divided regulatory responsibility between EPA and the U.S. Army Corps of Engineers ("Army Corps"). *See id.* §§ 1344(a)–(c); 33 C.F.R. § 323.2(c), (e). Through Section 404(c) of the CWA, Congress entrusted EPA with the power to protect ecologically sensitive and valuable areas from future projects and to override Army Corps permitting decisions for such

Case 3:24-cv-00132-SLG   Document 32   Filed 10/01/24   Page 6 of 25

projects when EPA determines a proposed project would have an "unacceptable adverse effect" on fisheries, wildlife, or recreational areas. 33 U.S.C. § 1344(c) [hereinafter Section 404(c)].

In May 2010, EPA received requests from six federally-recognized Tribes in the Bristol Bay region, the commercial fishing industry, and environmental groups, among others, to use its authority under Section 404(c) to protect the Bristol Bay watershed from large-scale mining at the Pebble deposit. Ex. 1 at 25–26. SalmonState has been involved in efforts to protect the Bristol Bay watershed from large-scale industrial mining at the Pebble deposit for many years. Alcuaz Decl. ¶ 10; Anderson Decl. ¶ 5; Barrett Decl. ¶ 8 Bristol Decl. ¶ 4; Cummings Decl. ¶ 12–13; Haas Decl. ¶ 6; Feniger Decl. ¶ 4; Kiekow Heimer Decl. ¶¶ 8–17; K. Miller Decl. ¶ 10; P. Miller Decl. ¶ 8; Ritter Decl. ¶ 8; Templeton Decl. ¶ 5.[1]

Recognizing the importance of the Bristol Bay watershed, EPA began an extensive and rigorous consultation and watershed assessment process in anticipation of possible

---

[1] All but three of the declarations filed in support of SalmonState's present motion to intervene in the above-captioned matter were originally filed with SalmonState's Joint Motion to Intervene in *PLP v. EPA*, Case No. 3:24-cv-000-SLG and, thus, the caption and footer on these declarations reflect the case information for PLP's lawsuit. Due to the strong similarity and overlap of facts at issue here, in INL's case, SalmonState submits largely the same declarations in support of its present motion to intervene. The only exceptions are the declaration of Andrea Feniger which, due to staffing changes, has been updated to replace the previous organizational declaration for proposed Intervenor-Defendant Sierra Club, and the declarations of Bonnie Gestring and Everett Thompson in support of Earthworks, which is not a party to this action.

Section 404(c) protections. In August 2010, EPA met with Tribal governments and stakeholders, including PLP. Ex. 1 at 26. EPA then invited all thirty-one federally-recognized Tribal governments of the Bristol Bay region to participate in consultation and coordination on an ecological risk assessment. Ex 1. at 28. In May 2012, EPA released a Draft Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska and, subsequently, held eight noticed public hearings and a public comment period, resulting in approximately 233,000 comments submitted to EPA. Ex. 1 at 27–28.

Thus, after three years of extensive consultation and scientific analysis, EPA issued its Final Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska ("Watershed Assessment"). Ex. 1 at 26–28. In the Watershed Assessment, EPA concluded "porphyry copper mining of the scale contemplated at the Pebble deposit could result in unacceptable adverse effects on fishery areas." Ex. 1 at 28. Accordingly, in July 2014, EPA published a Proposed Determination to withdraw portions of the Bristol Bay region as disposal sites for mining waste. Ex. 1 at 29.

## III.    EPA SUBSEQUENTLY REVERSED ITS POSITION ON PROTECTING BRISTOL BAY.

PLP challenged EPA's 2014 Proposed Determination in a series of lawsuits, which brought EPA's Section 404(c) review process to a halt. *See* Order on Prelim. Inj., *PLP v. EPA*, No. 3:14-cv-0171-HRH (D. Alaska Nov. 25, 2014), ECF No. 90. In 2017, PLP and EPA entered a settlement agreement to resolve these cases, under which EPA agreed to

Case 3:24-cv-00132-SLG   Document 32   Filed 10/01/24   Page 8 of 25

initiate a process to withdraw its 2014 Proposed Determination and to withhold issuing any recommended determination until the earlier of May 11, 2021 or issuance of notice by the Army Corps of its Final Environmental Impact Statement on PLP's permit application. In return, PLP agreed to submit its permit application to the Army Corps within 30 months of execution of the settlement agreement. Ex. 1 at 30.

In July 2017, EPA published notice of its process to withdraw the 2014 Proposed Determination. Ex. 1 at 30. EPA received more than one million public comments on its proposal to withdraw its 2014 Proposed Determination, of which "[a]pproximately 99 percent of commenters expressed opposition to the withdrawal of the 2014 Proposed Determination." Ex. 1 at 30. In December 2017, PLP submitted a permit application to the Army Corps describing its plans to develop a mine at the Pebble deposit. Ex. 1 at 30. In 2018, EPA revisited its proposal to withdraw its 2014 Proposed Determination, opting to leave the 2014 Proposed Determination in place during the pendency of the Army Corps' review of PLP's permit application. Ex. 1 at 31.

In August 2019, however, EPA abruptly reversed course and unlawfully withdrew its 2014 Proposed Determination ("Withdrawal Decision"). Ex. 1 at 32. SalmonState and nearly all of the present applicants, in conjunction with a broader coalition of Tribal entities and commercial fishing and sport-fishing interests, filed lawsuits challenging EPA's Withdrawal Decision. *See* Compl., *SalmonState, et al. v. EPA*, Case No. 3:19-cv-00267-SLG (D. Alaska Oct. 9, 2019), ECF No. 1; Compl., *Bristol Bay Economic*

*Develop. Corp., et al. v. EPA*, Case No. 3:19-cv-00265-TMB (D. Alaska Oct. 8, 2019), ECF No. 1; Compl., *Trout Unlimited v. EPA*, Case No. 3:19-cv-00268-TMB (D. Alaska Oct. 9, 2019), ECF No. 1.

Meanwhile, the Army Corps issued a record of decision denying PLP's permit application under Section 404(b) of the CWA in November 2020. Ex. 1 at 33. The Army Corps found "the proposed project would cause unavoidable adverse impacts to aquatic resources which would result in Significant Degradation to aquatic resources." Ex. 1 at 33. (quoting Letter from David S. Hobbie, Chief, Regional Regulatory Division, U.S. Army Corps of Engineers, to James Fueg, Pebble Limited Partnership (Nov. 25, 2020)).

## IV.    EPA RESUMED ITS 404(C) PROCESS AND ISSUED ITS FINAL DETERMINATION TO PROTECT BRISTOL BAY.

In June 2021, the Ninth Circuit found that EPA could not withdraw its 2014 Proposed Determination unless it could demonstrate that "the discharge of materials would be unlikely to have an unacceptable adverse effect." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 757 (9th Cir. 2021). EPA then filed a motion to vacate its withdrawal decision with this Court, which the Court granted, remanding the matter to EPA for further consideration. Order Granting Mot. to Remand, *Bristol Bay Econ. Dev. Corp. et al. v. Pirzadeh, et al.*, Case No. 3:19-cv-00265-SLG (D. Alaska Oct. 29, 2021), ECF No. 109. In May 2022, EPA published a revised proposed determination ("2022 Proposed Determination"). After receiving 582,000 written comments, "approximately 99 percent of which expressed support for the proposed determination," on January 30, 2023, EPA

issued a Final Determination to withdraw portions of the Bristol Bay region from being available for use as disposal sites for mining waste. Ex. 1 at 14–15. The Final Determination protects the Bristol Bay watershed from the unacceptable adverse effects of the proposed Pebble Mine and any other large-scale mining at the Pebble deposit with "discharges of dredged or fill material … that would result in the same or greater levels of loss or streamflow changes" as the proposed Pebble Mine. Ex. 1 at 18; *see also* EPA, *Final Determination for Pebble Deposit Area*, January 31, 2023, https://www.epa.gov/bristolbay/final-determination-pebble-deposit-area. In March 2024,

PLP and Northern Dynasty filed litigation in this Court challenging EPA's Final Determination. The State of Alaska filed a lawsuit challenging EPA's Final Determination on similar grounds in June 2024. SalmonState has been granted permissive intervention in both cases. *See* Jt. Mot. to Intervene, *Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG (D. Alaska May 17, 2024), ECF No. 32; Order Granting Motions to Intervene, Case No. 3:24-cv-00059-SLG (D. Alaska Aug. 22, 2024), ECF No. 95; Jt. Mot. to Intervene, *State of Alaska v. EPA*, Case No. 3:24-cv-00084-SLG (D. Alaska June 28, 2024), ECF No. 23; Order Granting Motions to Intervene, Case No. 3:24-cv-00084 (D. Alaska Aug. 23, 2024), ECF No. 57. INL's present lawsuit challenges and seeks vacatur of the same EPA decision.

## ARGUMENT

**I. SALMONSTATE MEETS THE TEST TO INTERVENE AS A MATTER OF RIGHT.**

This Court applies a four-part test to determine whether intervention as of right is warranted under Rule 24(a)(2), which considers: (1) the timeliness of the motion, (2) whether "the applicant has a significant protectable interest relating to the property or transaction" at issue, (3) whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest," and (4) whether "existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *see also W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Courts within the Ninth Circuit grant intervention liberally. As the Ninth Circuit explained, "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)) (internal quotation marks omitted). Courts' intervention inquiries are "guided primarily by practical and equitable considerations." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Intervention should be granted to "as many apparently concerned persons as is compatible with efficiency and due process." *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989), *overruled in part by Wilderness Soc'y*

SalmonState, et al.'s Jt. Mot. to Intervene
*Iliamna Natives Ltd. v. EPA*, Case No. 3:24-cv-00132-SLG
Page 12 of 25

*v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011). SalmonState satisfies all four factors to intervene as a matter of right.

### A.    SALMONSTATE'S MOTION IS TIMELY.

The timeliness of a motion to intervene is measured by considering "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water Corp.*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)) (internal quotation marks omitted). Generally, a motion to intervene is timely when made at the early stages of the proceedings. *Citizens for Balanced Use*, 647 F.3d at 897.

This motion is timely because it is made at the early stage of proceedings, not long after Defendants have filed their answer. No proceedings have been scheduled, and no substantive motions have been decided. Accordingly, no parties will be prejudiced by SalmonState's intervention. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996); *Cook Inletkeeper v. U.S. Dep't of the Interior*, No. 3:22-cv-00279-SLG, 2023 U.S. Dist. LEXIS 99634, at *5 (D. Alaska June 8, 2023) (intervention timely where "no dispositive motions had been filed"). The first intervention factor is therefore satisfied.

**B.    SALMONSTATE HAS SIGNIFICANT, LEGALLY PROTECTABLE INTERESTS IN THE BRISTOL BAY WATERSHED AND EPA'S FINAL DETERMINATION.**

An applicant shows a significant protectable interest in a case when "(1) [the applicant] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (alteration in original) (citation omitted). An applicant generally demonstrates a protectable interest if "it will suffer a practical impairment of its interests as a result of the pending litigation." *Cal. ex. rel. Lockyer v. United States* (*Lockyer*), 450 F.3d 436, 441 (9th Cir. 2006); *see also Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

SalmonState satisfies this requirement because the organizations within this group and their members have well-established and long-standing interests in preserving and enjoying the fisheries, wilderness, wildlife, subsistence and recreational resources, and aesthetic characteristics of the Bristol Bay watershed, which are threatened by large-scale mining operations at the Pebble deposit and would be impaired if Plaintiffs succeed in their challenge to EPA's Final Determination.

Many of SalmonState's members rely on Bristol Bay's fisheries for food and income, as well as maintaining their culture and community ties.[2]  Their health, financial

---

[2] SalmonState's members' subsistence and commercial fishing interests span the Bristol Bay watershed from Nushagak Bay (Liedberg Decl. ¶ 6) to Egegik, Naknek/Kvichak, Ugashik Districts (Flora Decl. ¶ 4), Nushagak, Kvichak, Ugashik, Igushik, Naknek, and Egegik rivers (Vantrease Decl. ¶ 3), Naknek River and Kvichak Bay (Brown Decl. ¶ 4); Lake Iliamna (Nudlash Decl. ¶ 9).

well-being, and way of life would be harmed if salmon runs were harmed by pollution from large-scale mining. Flora Decl. ¶ 5; Knutsen Decl. ¶¶ 12–13; Lee Decl. ¶ 8; Liedberg Decl. ¶ 8; Nudlash Decl. ¶ 7; Schaad Decl. ¶¶ 7–9; Shavelson Decl. ¶ 5; Vantrease Decl. ¶ 7. Many of SalmonState's members partake in subsistence and personal-use fishing practices in the Bristol Bay watershed. Knutsen Decl. ¶ 6; Liedberg Decl. ¶ 6; Nudlash Decl. ¶¶ 7–9; Silber Decl. ¶ 6; Shavelson Decl. ¶ 5. Many of SalmonState's members also earn their financial livelihoods in the commercial fishing industry of Bristol Bay. Brown Decl. ¶¶ 4–9; Cummings Decl. ¶ 4; Flora Decl. ¶ 4; Lee Decl. ¶¶ 5–10; Schaad Decl. ¶ 2; Shavelson Decl. ¶ 5; Vantrease Decl. ¶¶ 3, 6. Commercial fishing in the Bristol Bay watershed is a way of life for many families across Alaska, and SalmonState's members partake in commercial fishing enterprises that have been passed down generations. Brown Decl. ¶ 8; Knutsen Decl. ¶¶ 5–7; Vantrease Decl. ¶¶ 3, 6. Indeed, commercial fishing is often a family endeavor, as members crew boats alongside their children—some as young as ten years old and some who have grown and now carry on the family business and way of life. Brown Decl. ¶ 9; Schaad Decl. ¶ 2; Flora Decl. ¶ 4. Furthermore, these commercial fishing revenues—taxes on fish and vessels—also support community services in the Bristol Bay region. Knutsen Decl. ¶ 8; Lee Decl. ¶ 14; Silber Decl. ¶ 6. If Plaintiffs succeed in vacating EPA's Final Determination, SalmonState's members will face an existential threat to their cultural and financial interests in Bristol Bay's unmatched fisheries.

Interests in preserving an area's wilderness values, wildlife, and habitat are also legally protectable interests for purposes of intervention. *See United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992); *see, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 898 (determining intervenor-applicants had a protectable interest in the action "given their interest in preserving wilderness character" in the lands at issue); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding group's interest in the preservation of birds and bird habitats satisfies the "protectable interest" factor). The sprawling infrastructure and watershed pollution from large-scale mining would harm SalmonState's members who sport-fish, hike, boat, study and view wildlife, and run tourism businesses—such as lodges, bear viewing trips, and fishing expeditions—in the Bristol Bay, Lake Clark, and Cook Inlet regions. Adams Decl. ¶ 5; Anderson Decl. ¶ 12; Flora Decl. ¶ 4; Gustafson Decl. 8; Hamilton Decl. ¶¶ 9, 13–18; Feniger Decl. ¶ 7; Lee Decl. ¶¶ 7–9; Liedberg Decl. ¶ 8; Nudlash Decl. ¶¶ 7–12; Olson Decl. ¶¶ 5, 8, 10; Richardson Decl. ¶¶ 5–6; Silber Decl. ¶¶ 4, 8. SalmonState's members own diverse, broad-ranging businesses supported by the world-renowned recreational opportunities of the Bristol Bay region, including sport-fishing guide services, wildlife photography ventures, filmmaking contracts, and a remote wilderness lodge. Gustafson Decl. ¶ 6; Hamilton Decl. ¶¶ 8, 11; Olson Decl. ¶¶ 5, 8; Silber Decl. ¶¶ 4–5. SalmonState's sport-fishing enthusiasts describe the recreational fishing opportunities in the Bristol Bay watershed as extraordinary and

one-of-a-kind. Anderson Decl. ¶ 10; Gustafson Decl. ¶ 6; Richardson Decl. ¶¶ 5–6. SalmonState's members and their clients visit the Bristol Bay region for its unique and renowned solace and beauty and creative and artistic inspiration—all threatened by INL's challenge to EPA's Final Determination and its protections. Anderson Decl. ¶ 9; Gustafson Decl. ¶ 6; Feniger Decl. ¶¶ 7–8; Hamilton Decl. ¶¶ 9, 11, 18; Lee Decl. ¶¶ 11–12; Nudlash Decl. ¶¶ 10–12; Olson Decl. ¶¶ 5, 8; Richardson Decl. ¶¶ 5–6.

Moreover, SalmonState and its members have a protectable interest in defending EPA's Final Determination because they helped advocate for it. "A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Nw. Forest Res. Council*, 82 F.3d at 837 (stating public interest groups may intervene when groups "were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose").

SalmonState and its members' missions are focused on protecting waters, lands, wilderness, and wildlife—and many applicants have initiatives that specifically focus on protecting Bristol Bay from large-scale mining. Adams Decl. ¶¶ 3–4; Alcuaz Decl. ¶¶ 3, 5; Anderson Decl. ¶ 4; Barrett Decl. ¶¶ 4, 6–7; Bristol Decl. ¶¶ 4–5; Cummings Decl. ¶¶ 4–6; Hamilton Decl. ¶¶ 3, 6–7; Haas Decl. ¶ 4; Feniger Decl. ¶¶ 3–4; Kiekow Heimer Decl. ¶¶ 3, 8; K. Miller Decl. ¶¶ 4, 8; P. Miller Decl. ¶¶ 3, 5; Ritter Decl. ¶ 5; Schmitt Decl. ¶¶ 3–4, 6, 8; Templeton Decl. ¶ 4. In furtherance of its organizational objectives,

SalmonState has worked for decades to protect the headwaters of Bristol Bay. *See* Adams Decl. ¶¶ 3–4; Alcuaz Decl. ¶¶ 8–9; Anderson Decl. ¶¶ 5–6; Barrett Decl. ¶¶ 7–10; Bristol Decl. ¶¶ 4-5; Haas Decl. ¶ 6; Feniger Decl. ¶¶ 4–6; Hamilton Decl. ¶ 19; Kiekow Heimer Decl. ¶¶ 8–17; K. Miller Decl. ¶¶ 10–13; P. Miller Decl. ¶ 8; Ritter Decl. ¶¶ 7–8, 10; Schmitt Decl. ¶¶ 10–12; Templeton Decl. ¶¶ 5–8. Nearly all of the present applicants challenged in court EPA's earlier decision to withdraw its Proposed Determination protecting Bristol Bay, and they consistently encouraged EPA to adopt the Final Determination challenged in this case. *See* Compl., *SalmonState v. EPA*, Case No. 3:19-cv-00267-SLG (D. Alaska Oct. 9, 2019); *see also* Adams Decl. ¶ 4; Alcuaz Decl. ¶¶ 8–9; Anderson Decl. ¶¶ 4–5, 7; Barrett Decl. ¶¶ 7–10; Bristol Decl. ¶¶ 4-5; Haas Decl. ¶ 6; Feniger Decl. ¶ 6; Kiekow Heimer ¶¶ 8–17; K. Miller Decl. ¶¶ 10–13; P. Miller Decl. ¶ 8; Ritter Decl. ¶ 8; Schmitt Decl. ¶¶ 11–12; Templeton Decl. ¶¶ 6–8. Thus, SalmonState has significant protectable interests in obtaining and preserving EPA's Final Determination, meeting the second intervention factor.

### C.     A RULING IN INL'S FAVOR WOULD IMPAIR OR IMPEDE SALMONSTATE'S ABILITY TO PROTECT ITS INTERESTS.

The third intervention factor is met if, as a practical matter, the action may impair or impede the applicant's ability to protect its interests. FED. R. CIV. P. 24(a)(2); FED. R. CIV. P. 24 advisory comm. notes. The second and third factors are closely related. *Lockyer*, 450 F.3d at 442. The bar is not high, asking only if "the action 'may' impair rights . . . rather than whether the [disposition] will 'necessarily' impair them." *City of*

SalmonState, et al.'s Jt. Mot. to Intervene                                   Page 18 of 25
*Iliamna Natives Ltd. v. EPA*, Case No. 3:24-cv-00132-SLG

*Los Angeles*, 288 F.3d at 401. In determining whether the action may impair an applicant's interests, courts look to the relief requested. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

The interest impairment factor is satisfied here because, if the Court were to declare Section 404(c) of the CWA unconstitutional and grant INL's requested relief by vacating EPA's Final Determination, SalmonState would not only face continued threats to its protectable interests in the health and sustainability of Bristol Bay waters, it would also lose all recourse to EPA for any protective action under Section 404(c). SalmonState's members' subsistence, commercial fishing, and other cultural and economic interests in the Bristol Bay watershed, and their ability to protect those interests, would be harmed by a determination that Section 404(c) is unconstitutional and by a reversal of EPA's Final Determination based on such a finding. Flora Decl. ¶ 5; Knutsen Decl. ¶¶ 12–13; Liedberg Decl. ¶ 8; Schaad Decl. ¶¶ 7–9; Shavelson Decl. ¶ 5; Vantrease Decl. ¶ 7. The interests of SalmonState's members who visit, recreate, and view wildlife on the waters and lands of the Bristol Bay region would also be harmed, along with their ability to protect those interests. Adams Decl. ¶ 5; Anderson Decl. ¶ 12; Flora Decl. ¶ 4; Gustafson Decl. ¶ 8; Hamilton Decl. ¶¶ 9, 13–18; Feniger Decl. ¶ 7; Liedberg Decl. ¶ 5; Olson Decl. ¶¶ 5, 8, 10; Richardson Decl. ¶¶ 5–6; Silber Decl. ¶ 11.

It is important for SalmonState to participate as a party in this lawsuit to ensure that it can continue to protect its interests. The third intervention factor is therefore satisfied.

### D.    EPA WOULD NOT ADEQUATELY REPRESENT SALMONSTATE'S INTERESTS.

To satisfy the fourth factor, an applicant need only show that "representation of its interests by existing parties 'may be' inadequate;" indeed, "the burden of showing inadequacy is 'minimal.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also W. Watersheds Project*, 22 F.4th at 840. In considering adequacy of representation, courts consider whether an existing party "will undoubtedly make all of the intervenor's arguments," whether the party "is capable of and willing to make such arguments," and "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion*, 713 F.2d at 528. "The 'most important factor' in assessing the adequacy of representation is 'how the [applicant's] interest compares with the interests of existing parties.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). Questions about the adequacy of representation should be resolved "in favor of intervention." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011).

SalmonState meets the minimal burden of showing the inadequacy of representation because their interests are not identical to EPA's interests. *See Citizens for*

*Balanced Use*, 647 F.3d at 899. In pursuing protections for the Bristol Bay watershed, SalmonState has historically advocated for interpretations of Section 404(c) that differ from EPA's interpretation of that statute.[3] As such, SalmonState will likely offer different arguments than EPA and contribute unique perspectives to the arguments and proceedings in this case as well. *Sw. Cr. for Biological Diversity*, 268 F.3d at 823–24; *see also Cook Inletkeeper v. U.S. Dep't of the Interior*, No. 3:22-CV-00279-SLG, 2023 U.S. Dist. LEXIS 99634, at *6 (D. Alaska June 8, 2023) (history of litigation between defendant and intervenor showed that defendant would not "undoubtedly" make same arguments as applicant).

In particular, SalmonState and EPA's thirteen-year history of divergence as to the importance and need for Section 404(c) protections for Bristol Bay further underscores how their interests and ultimate objectives have differed. *See supra* pp. 8–12. This previous "adversarial history is an important consideration" and demonstrates a divergence of interests between SalmonState and EPA. *Alaska v. Nat'l Marine Fisheries Serv.*, 2023 U.S. Dist. LEXIS 60255, at *23 (Apr. 5, 2023). Moreover, even assuming a presumption of adequate representation applies (it does not), the difference in nature and scope of SalmonState's interests, the adversarial history between SalmonState and EPA, and the potential change in administration during the pendency of this litigation, all serve

---

[3] *See* Compl., *SalmonState, et al. v. EPA*, Case No. 3:19-cv-00267-SLG (D. Alaska Oct. 9, 2019), ECF No. 1 (arguing in opposition to EPA that the CWA statute itself constrained EPA's ability to withdraw a proposed determination).

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 21 of 25
*Iliamna Natives Ltd. v. EPA*, Case No. 3:24-cv-00132-SLG

to rebut any such presumption. *Sw. Cr. for Biological Diversity*, 268 F.3d at 823 (determining presumption of adequate representation was rebutted because the government's and applicants' interests are not "sufficiently congruent").

In sum, EPA would not adequately represent SalmonState's interests, and the fourth intervention factor is therefore satisfied.

## II. SALMONSTATE SHOULD BE GRANTED PERMISSIVE INTERVENTION.

If this Court determines that SalmonState—or one or more of the applicants within this group—do not satisfy the test for intervention as of right, this Court should grant them permissive intervention. Civil Rule 24(b) authorizes permissive intervention when an applicant's claim or defense poses questions of law or fact in common with the existing action and when the application is timely and will not unduly delay or prejudice the adjudication. FED. R. CIV. P. 24(b)(1)(B), (3). Permissive intervention thus has a much lower bar than intervention as of right; removing requirements relating to protectable interests and adequacy of representation. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108–09 (9th Cir. 2002), *overruled in part by Wilderness Soc'y*, 630 F.3d at 1180. Courts have broad discretion in granting permissive intervention, and it should be liberally granted. *Id.*

SalmonState readily meets this standard. First, SalmonState intends to oppose Plaintiffs' challenges to the lawfulness of EPA's decision-making process and final decision based on the same federal statutes and administrative record that are already at

issue in this matter—*i.e.*, they intend to assert common defenses of law and fact with the existing action. Additionally, as discussed above, this motion is timely, and intervention will not cause any undue delay or prejudice to the proceedings. *See supra* Argument Part I.A. Accordingly, if the Court finds that SalmonState—or any of the applicants—do not satisfy the test for intervention of right, permissive intervention is warranted.

**CONCLUSION**

For the foregoing reasons, SalmonState respectfully requests that the Court grant its Motion to Intervene as of right or, in the alternative, permissive intervention.

Respectfully submitted this 1st day of October, 2024,


 s/ Siobhan McIntyre
Siobhan McIntyre (AK Bar No. 1206050)
Joanna Cahoon (AK Bar No. 1405034)
TRUSTEES FOR ALASKA
*Attorneys for Applicant Intervenor-Defendants*
*SalmonState, Alaska Community Action on Toxics,*
*Alaska Wilderness League, Alaska Wildlife Alliance,*
*Cook Inletkeeper, Friends of McNeil River, Kachemak*
*Bay Conservation Society, National Parks*
*Conservation Association, National Wildlife*
*Federation, Sierra Club, The Alaska Center, and Wild*
*Salmon Center*


 s/ Charisse Arce (with consent)
Charisse Arce (AK Bar No. 2303017)
Erin Colón (AK Bar No. 1508067)
EARTHJUSTICE
*Attorneys for Applicant Intervenor-Defendants Center*
*for Biological Diversity and Friends of the Earth*


 s/ Thomas Zimpleman (with consent)

SalmonState, et al.'s Jt. Mot. to Intervene                    Page 23 of 25
*Iliamna Natives Ltd. v. EPA*, Case No. 3:24-cv-00132-SLG

Thomas Zimpleman (*pro hac vice* pending)
Jacqueline Iwata (*pro hac vice* pending)

Joel Reynolds (*pro hac vice* pending)
NATURAL RESOURCES DEFENSE COUNCIL
*Attorneys for Applicant Intervenor-Defendant Natural*
*Resources Defense Council*

## Certificate of Compliance

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because it contains 5,290 words, excluding the parts of the motion exempted by Local Civil Rule 7.4(a)(4).

*s/ Siobhan McIntyre*
Siobhan McIntyre

## Certificate of Service

I certify that on October 1, 2024, I caused a copy of the MOTION TO INTERVENE, LIST OF DOCUMENTS FILED IN SUPPORT, DECLARATIONS, EXHIBIT, [PROPOSED] ANSWER, and [PROPOSED] ORDER to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case.

*s/ Siobhan McIntyre*
Siobhan McIntyre